Abraham S. SIND, Appellant,

v.

Dan POLLIN et al., Appellees.

No. 10065.

District of Columbia Court of Appeals.

Argued March 11, 1976.

Decided May 3, 1976.

**654**

Steven Pavsner, Chevy Chase, Md., with whom Jules Fink and Isadore B. Katz, Silver Spring, Md., were on the brief, for appellant.

Edgar B. May, Washington, D. C., for appellees.

Before KERN, GALLAGHER and MACK, Associate Judges.

KERN, Associate Judge:

On September 10, 1965, appellant Sind and another individual[1] [the Sind group] entered into a joint venture agreement with appellees Pollin, Gandel, Kobrin, and Ades[2] [the Pollin group], for the purpose of developing a 139.7 acre tract of land in Maryland. The Sind group owned a contract to acquire the land, which they contributed to the venture, and the Pollin group agreed to invest all cash necessary to complete the purposes of the venture, including signing notes for the purchase price of the land.[3] Each group owned a one-half interest in the venture, and after repayment of all funds advanced, profits and losses were to be shared equally.

The development of the land was delayed for a time as appellant Sind tried to win approval for development of the property in half-acre lots. His efforts failed, and in June of 1967 the property was rezoned for two-acre lots; as a result the property depreciated in value. A few weeks later the two groups met to discuss their joint enterprise, and appellant claims that he was then told to start advancing half of all funds required. When he refused on the ground that the joint venture agreement did not require him to contribute any cash, he alleges that the Pollin group threatened to default on the notes which Sind and the Pollin group had signed. Appellant then alleges he was given the option of releasing his interest in the venture in return for which the Pollin group would not default.

As a result of this meeting the Sind group agreed to withdraw from the joint venture. An agreement was executed on June 27, 1967, which provided that the joint venture agreement was terminated and that the Sind group's right, title and interest in the land was to be conveyed to the Pollin group. As consideration therefor, the Pollin group agreed to indemnify the Sind group from any loss, cost, damage or expense resulting from the assumption by the joint venture of a debt in the amount of $66,850.22 and thirteen promissory notes in the amount of $506,369.78 given to secure the purchase price of the 139.7 acres of property. The Pollin group also agreed to release the Sind group from any losses under the joint venture agreement. Conversely, the Sind group released all rights under the agreement to share in any profits from the sale or disposition of the property. The Sind group also received a right of first refusal to buy the property if the Pollin group received from a

---

1. Sind later became the assignee of all right, title, and interest in the venture held by this individual.
2. Appellee Ades is now deceased but his estate was named as a party.

3. The Pollin group signed notes for the land arranged by appellant Sind and also cosigned by him. Sind alone had signed and negotiated the contract to purchase the property.

third party a bona fide offer to purchase the property.

In July of 1974 appellees found a buyer for the property and negotiated a sale. On July 23, 1974, appellant filed a complaint[4] claiming that the release agreement of June 27, 1967, was void for lack of consideration and because it was the result of business duress or coercion exerted by the Pollin group. Appellant requested a preliminary injunction enjoining disbursement of the proceeds of the sale, the imposition of a trust in favor of appellant on the proceeds of the sale, and an accounting. The motion for a preliminary injunction was denied on August 16, 1974.[5] Appellees' motion for summary judgment was heard on May 27, 1975, and was granted on June 24, 1975. Appellant now appeals contending that summary judgment was improper since the release agreement was void for failure of consideration and economic duress.

■ At the outset appellant argues that the actions of the Pollin group must be judged by a higher standard that the "morals of the marketplace" since the Pollin group stood in a fiduciary relationship to appellant. We agree that "[t]he relationship of joint adventurers gives rise to certain reasonably well-defined fiduciary duties and obligations. The duty imposed is essentially one of good faith, fair and open dealing and the utmost of candor and disclosure . . .." *Libby v. L. J. Corp.,* 101 U.S.App.D.C. 87, 90, 247 F.2d 78, 81 (1957). However, this fiduciary relationship exists only within the scope of the enterprise and with respect to the subject matter of the joint venture. *See Eagle-Picher Co. v. Mid-Continent Lead & Zinc Co.,* 209 F.2d 917, 919 (10th Cir. 1954);

*Dexter & Carpenter, Inc. v. Houston,* 20 F.2d 647, 652 (4th Cir. 1927).

■ In the instant case, the Pollin group had certain fiduciary obligations to appellant with respect to (1) the development of the subject property, and (2) the furtherance of the purposes of their joint venture. This relationship precluded "one member of the venture from purchasing or otherwise dealing with the property involved in the venture without a full disclosure to his associates." *Libby v. L. J. Corp., supra* at 91, 247 F.2d at 82. However, although the parties were standing in a fiduciary relationship with regard to the joint venture when they entered into a separate and different agreement in 1967, we are not persuaded that this fiduciary relationship was applicable to that second agreement, because the second agreement was clearly outside the scope of the joint venture. Indeed, that agreement purported to supersede the joint venture agreement. Furthermore, appellees did not occupy a position of trust with respect to appellant in negotiating the release agreement, as would be the case with a trustee or attorney,[6] and appellant did not sue for damages for breach of a fiduciary relationship. Therefore application of fiduciary standards in the instant case is not warranted, and we apply ordinary commercial principles in considering appellant's contentions.

■ At the hearing on May 27, 1975, the trial court found as a matter of law that there was consideration for the 1967 release agreement entered into by the parties because that agreement protected the Sind group against any losses under the prior joint venture agreement. Appellant argues that any losses are "hypothetical"

4. Named as defendants were the three surviving members of the Pollin group, the estate of Ades, the deceased member of the group, and Commonwealth Title Insurance Co., holder of the proceeds of the sale.

5. The denial of a preliminary injunction was not appealed.

6. *See, e. g., Udall v. Littell,* 125 U.S.App. D.C. 89, 96–97, 366 F.2d 668, 676, *cert. denied,* 389 U.S. 1007, 87 S.Ct. 713, 17 L.Ed. 2d 545 (1966) ; *Spilker v. Hankin,* 88 U.S. App.D.C. 206, 208–09, 188 F.2d 35, 37–38 (1951).

and hence that relief from such losses could not as a matter of law constitute consideration. It is true that no actual losses would have occurred until sale of the property at less than its purchase price and that appellant could have vetoed such a voluntary sale. However, it was possible for an involuntary sale of the property to have occurred, as in a condemnation proceeding or a tax sale,[7] which of course would have resulted in financial losses to the joint venturers.

Furthermore, the property had a "paper" loss at the time of the 1967 agreement in that its fair market value at the time was lower than the purchase price. Appellees' promise to protect appellant against potential losses for which otherwise he would have been partially liable, then, is a detriment to appellees and a benefit to appellant. *See Kidwell & Kidwell, Inc. v. W. T. Galliher & Bro., Inc.,* D.C.App., 282 A. 2d 575, 578 (1971). Although the parties did not "expect" to lose any money when they entered the joint venture agreement, such a possibility did exist. Consequently, appellees' promise to appellant furnishes consideration for appellant's release of his interest in the property,[8] and as a matter of law the 1967 contract is not void. *See Kidwell & Kidwell, Inc. v. W. T. Galliher & Bro., Inc., supra.*

■ The trial court also rejected appellant's second argument, *viz.,* that the 1967 contract is void because he entered into it only as the result of economic duress and coercion, since it found as a matter of law that there was not sufficient evidence to raise an issue of fact on the question of economic duress. As this court stated in *Rizzi v. Fanelli,* D.C.Mun.App., 63 A.2d 872, 874 (1949), "[w]hat constitutes duress is a matter of law; but whether or not

duress existed in the particular transaction is usually a question of fact." Treating the allegations in appellant's complaint and affidavits as true, we agree with the trial court that as a matter of law they do not constitute a legal claim of economic duress.

According to the Restatement of Contracts § 492 (1932), duress is "any wrongful threat of one person by words or other conduct that induces another to enter into a transaction under the influence of such fear as precludes him from exercising free will and judgment . . . ." Duress may be exercised by "wrongful acts that compel a person to manifest apparent assent to a transaction without his volition or cause such fear as to preclude him from exercising free will and judgment in entering into a transaction." *Id.* § 493; *see O'Toole v. Lamson,* 41 App.D.C. 276, 285 (1914).

■ In his affidavits of August 9, 1974, appellant Sind alleged that the Pollin group threatened to default on certain notes given to secure the purchase price of the joint venture property. Because Sind was a guarantor of some of the notes and had co-signed others, upon default he would have been obliged to pay off the notes and then sue the Pollin group under the joint venture agreement for reimbursement. Sind alleges that such an occurrence "would have had predictable, dire consequences to Sind's reputation as a developer, his ability to acquire other parcels of land, and thus his ability to earn a livelihood." Taken together, appellant's allegations add up to a threat by the Pollin group to breach a contract which *might* have affected adversely his credit and reputation.

■ As the court noted in *Tri-State Roofing Co. v. Simon,* 187 Pa.Super. 17, 142 A.2d 333, 335 (1958):

> the 1967 contract constitutes a separate source of consideration for appellant's release of his interest in the land and profits of the joint venture.

---

7. *See* Md.Code Ann. art. 81, § 73 (1975); Md. Real Property §§ 12–102, –104 (1974).

8. We also note that the right of first refusal granted to appellant by the Pollin group in

A threatened breach of contract ordinarily is not in itself coercive but if failure to receive the promised performance will result in irreparable injury to business, the threat may involve duress.
. . .

\*   \*   \*   \*   \*   \*

"To constitute duress or business compulsion there must be more than a mere threat which might possibly result in injury at some future time, such as a threat of injury to credit in the indefinite future. . . ." [Citations omitted.]

Under this standard, we conclude that appellant's factual allegations and theory of economic coercion do not constitute duress as a matter of law. The harm appellant feared from appellees' default was uncertain and consequential. In addition, appellant's remedy at law—suing appellees for damages or impleading them as defendants in any action brought against appellant on the notes—would have been adequate to protect appellant from the immediate consequences of a default. *See Hartsville Oil Mill v. United States*, 271 U.S. 43, 49, 46 S.Ct. 389, 70 L.Ed. 882 (1926). Finally, we are not persuaded that the alleged threats by appellees, if carried out, would have resulted in irreparable injury to appellant's business, or that the threats were so extreme that they deprived appellant, a knowledgeable businessman, of the ability to exercise his free will and judgment.

Since there was no genuine issue of material fact as to the existence of duress as a ground for avoiding the contract, and since appellees were entitled to judgment as a matter of law, the trial court did not err in granting appellees' motion for summary judgment. *See Dewey v. Clark*, 86 U.S.App.D.C. 137, 143, 180 F.2d 766, 772 (1950); Super.Ct.Civ.R. 56.

*Affirmed.*