**Nail H. OZEROL, Appellant,**

v.

**HOWARD UNIVERSITY, Appellee.**

No. 86–1057.

District of Columbia Court of Appeals.

Argued Oct. 19, 1987.
Decided Aug. 11, 1988.

---

John M. Clifford, with whom Stephen A. Trimble, Washington, D.C., was on the brief, for appellant.

Charles T. Duncan, with whom, Richard P. Thornell and Lisa B. Dickieson, Washington, D.C., were on the brief, for appellee.

Before ROGERS and STEADMAN, Associate Judges, and REILLY, Senior Judge.

STEADMAN, Associate Judge:

Appellant Ozerol is a former professor at Howard University ("Howard"). He alleges that Howard breached an oral agreement to give him tenure. The trial court ruled that the parol evidence rule precluded proof of such an oral agreement, since the parties had entered into a completely integrated subsequent written contract containing no such provision. We affirm.

I.

Ozerol is a specialist in the field of public health and international medicine. In 1980 he was a faculty member at the University

of Illinois. Negotiations took place between Ozerol and Howard, culminating, according to Ozerol, in an oral agreement whereby Howard would appoint Ozerol to the faculty at the rank of associate professor with tenure. Before any written agreement had been executed, Ozerol moved to the District of Columbia and commenced to work at Howard.

In early 1981, Ozerol signed two appointment letters proffered by Howard. A personnel recommendation form and a justification sheet were attached to each letter. His appointment was stated to be as an assistant professor for a period ending, in one letter, on June 30, 1981, and, in the other, on September 21, 1981.[1] No mention was made of tenure or of any right to reappointment. The personnel recommendation forms contained an entry for an indication of "indefinite" status but the box was not checked on either form. In March 1981, Ozerol submitted a written request for promotion to associate professor[2] but no action was taken. Later in 1981, Ozerol signed a second, nearly identical set of letters with expiration dates of June 30, 1982 and September 23, 1982.[3] Ozerol submitted another written request for promotion in March 1982.

In May 1982, Howard notified Ozerol of his termination, effective June 5, 1982. A year later, Ozerol filed the instant lawsuit, alleging that the University had breached the oral agreement to award him tenure and to promote him to Associate Professor.[4]

At the close of plaintiff's case and again at the close of all the evidence, Howard sought a directed verdict on the basis that only the terms of the written agreements should be considered. The motions were denied and the jury returned a verdict in Ozerol's favor. Howard thereupon moved for a judgment notwithstanding the verdict and, in the alternative, for a new trial, again asserting that evidence relating to the oral agreement should not have been presented to the jury. The trial court, reversing its prior position, ruled that "the written contract is fully integrated on both points [rank and tenure] and the jury should not have been permitted to consider the evidence of the conflicting oral promises." 113 Daily Wash.L.Rptr. 1049, 1055 (May 23, 1985) A new trial was granted. *Id.* The parties subsequently stipulated that with this ruling as the law of the case, any subsequent trial could only result in a directed verdict for Howard. Hence, a directed verdict in Howard's favor was entered and this appeal taken.

## II.

The dispositive issue on this appeal is the application of the parol evidence rule.

## A.

As a preliminary matter, Ozerol challenges Howard's right to raise this issue on appeal, since Howard did not object at the time testimony concerning the alleged oral agreement was introduced in plaintiff's case-in-chief. The trial court correctly ruled, on the facts of this case, that

---

1. Two separate appointment letters were involved because Ozerol's salary was covered by two different funding sources. Both letters were signed by the Dean of the College of Medicine.

2. The justification sheet attached to one of the appointment letters stated: "Dr. Nail H. Ozerol is expecting to be considered for the rank of Associate Professor as soon as the Promotion Committee in the Department of Community Health and Family Practice can consider such action." The justification sheet attached to the other letter similarly noted: "The initial appointment is for the rank of Assistant Professor, however, he will be considered for the rank of Associate Professor as soon as possible."

3. As with the first set, the box marked "indefinite" was not checked on either personnel recommendation form. The justification sheet attached to one of the letters stated: "Dr. Ozerol is being reappointed as Assistant Professor—Office of International Health."

4. Ozerol also sought damages for premature termination of employment under the second set of appointment papers. He was granted partial summary judgment and received damages of $7,774.49 for this breach. Howard does not contest this award on appeal.

this failure did not preclude Howard from subsequently raising the issue. As early as its pretrial brief, Howard argued that Ozerol could not use any prior oral promises to vary the terms of the written contract. At the close of plaintiff's case, Howard moved for a directed verdict, asserting that the execution of the written agreements superceded any prior oral understandings, a motion that was renewed at the close of all the evidence. Although Ozerol argues that Howard did not squarely invoke the parol evidence rule as such, we agree with the trial court that the issue was sufficiently raised at that point. While the better practice would be to also object at the point the parol evidence is proffered, the majority rule is that the point can be effectively raised in a motion for a directed verdict. The underlying rationale is that the parol evidence rule is a matter of substantive law, not a mere rule of evidence. *Farmers State Bank v. Keiser*, 83 S.D. 354, 356, 159 N.W.2d 388, 390 (1968); *Whitt v. Godwin*, 205 Va. 797, 139 S.E.2d 841 (1965); *Bushnell v. Elkins*, 34 Wyo. 495, 245 P. 304 (1926); *Mears v. Smith*, 199 Mass. 319, 85 N.E. 165 (1908). *See 1010 Potomac Assoc. v. Grocery Mfrs. of America*, 485 A.2d 199, 210 (D.C.1984); Annotation, *Modern Status of Rules Governing Legal Effect of Failure to Object to Admission of Extrinsic Evidence Violative of Parol Evidence Rule*, 81 A.L.R.3d 249 (1977).[5]

### B.

■ Having concluded that the issue is properly before us, we turn to consider the application of the parol evidence rule to the case at hand. As relevant here, that rule provides that when parties to a contract have executed a completely integrated written agreement, it supersedes all other understandings between the parties. Thus, the writing itself is viewed as the expression of the parties' intent. RESTATEMENT (SECOND) OF CONTRACTS § 213 (1979).

■ A completely integrated agreement is one adopted by the parties as a complete and exclusive statement of the terms of the agreement. It is contrasted with a partially integrated agreement, where the writing represents the agreement of the parties with respect to the matters stated therein but where there may be additional consistent oral terms. *Id.* at § 210.

Whether an agreement is integrated ultimately depends upon the intent of the parties. *Stamenich v. Markovic*, 462 A.2d 452, 456 (D.C.1983). Factors to be considered in ascertaining this intention are "the written contract, the conduct and language of the parties and the surrounding circumstances." *Id.* (citing *Standley v. Egbert*, 267 A.2d 365, 367 (D.C.1970)). This determination, however, is made not by the jury but rather by the trial court as a question preliminary to the submission of any questions of interpretation to the jury. RESTATEMENT (SECOND) OF CONTRACTS § 210(3). As we explained in *Luther Williams, Jr., Inc. v. Johnson*, 229 A.2d 163 (D.C.1967):

Whether a particular subject of negotiation is embodied by the writing *depends wholly upon the intent of the parties* thereto....

This intent must be sought where always intent must be sought, namely, in the *conduct* and *language* of the parties and the *surrounding circumstances*. The document alone will not suffice. What it was intended to cover cannot be known till we know what there was to cover. The question being whether certain subjects of negotiation were intended to be covered, we must compare the writing and the negotiations before we can determine whether they were in fact covered. Thus the apparent paradox is committed of receiving proof of certain negotiations in order to determine whether to exclude them; and this doubtless has sometimes seemed to lower the rule to a quibble. But the paradox is apparent only. The explanation is that these alleged negotiations are received only provisionally. Although in form the witnesses may be allowed to recite the facts,

---

**5.** We express no views on the more questionable issue whether total failure to raise the matter before the trial court would preclude any appellate review.

yet in truth the facts will be afterwards treated as immaterial and legally void, if the rule is held applicable. There is a preliminary question for the judge to decide as to the intent of the parties, and upon this he hears evidence on both sides; his decision here, *pro* or *con,* concerns merely this question preliminary to the ruling of law. If he decides that the transaction was covered by the writing, he does not decide that the excluded negotiations did not take place, but merely that *if* they did take place they are nevertheless legally immaterial. If he decides that the transaction was not intended to be covered by the writing, he does not decide that the negotiations did take place, but merely that *if* they did, they are legally effective, and he then leaves to the jury the determination of fact whether they did take place.

*Id.* at 165–66 (quoting 9 WIGMORE, EVIDENCE § 2430 (3d ed. 1940)) (emphasis in original).

■ Where the trial court makes a determination that an agreement is completely integrated, two results flow therefrom. First, no evidence may be introduced of prior (or contemporaneous) agreements or terms, whether consistent or inconsistent, within the scope of the written agreement. This is the classic parol evidence rule.[6]

■ Second, the meaning of the writing is a question for the trial court "unless the written language is not susceptible of a clear and definite undertaking, or unless

there is fraud, duress or mutual mistake." *Howard University v. Best,* 484 A.2d 958, 966–67 (D.C.1984) (citation omitted).[7] Otherwise put, only if the trial court finds that a contract is ambiguous and that the evidence supports more than one reasonable interpretation does its interpretation becomes a question for the jury. *Id.; Dodek v. CF 16 Corp.,* 537 A.2d 1086, 1092 (D.C. 1988).[8] A ground of confusion sometimes arises because of a failure to distinguish clearly between direct evidence as to what a particular party intended the language to mean, a subjective question, and evidence of the general situation, the relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties, all of which may be useful aids in determining whether objectively the meaning of the contract language "is not susceptible of a clear and definite undertaking." RESTATEMENT (SECOND) OF CONTRACTS § 212 comment b. *See Morgan v. American University,* 534 A.2d 323, 329–30 (D.C.1987); *Howard University v. Best, supra,* 484 A.2d at 967 n. 2.

### C.

■ The parties have no basic quarrel with the foregoing principles. Where they part company is over the correctness of the trial court's finding that the written documents executed by Ozerol, considered together with the Faculty Handbook,[9] were a

---

**6.** Where an agreement is only a partial integration of the understanding of the parties, additional oral terms that are consistent with the writing may be proven. RESTATEMENT (SECOND) OF CONTRACTS §§ 213, 215, 216.

**7.** This same rule applies to partially integrated contracts to the extent the agreement is expressed in the writing.

**8.** This is a matter of the proper interpretation of written contracts, not strictly an application of the parol evidence rule.

**9.** Ozerol argues that since Howard had not sent him a copy of the Faculty Handbook before he began working at Howard, and since there is no mention of the Handbook in the appointment papers, the provisions of the Handbook should not have been considered part of his written contract with Howard. In its opinion granting

Howard's motion for new trial, the trial court noted that this court has said on several occasions that in construing contracts of employment in a university setting, such contracts "'comprehend as essential parts of themselves the hiring policies and practices of the University as embodied in its employment regulations and customs.'" *Howard University v. Best, supra,* 484 A.2d at 967 (quoting *Greene v. Howard University,* 134 U.S.App.D.C. 81, 88, 412 F.2d 1128, 1135 (1969)). Ozerol's own testimony on cross-examination demonstrates the reasonableness of the trial court's finding that the Handbook constituted part of the integrated contract in the present case:

Q. You just said that every university has a faculty manual. Has that been your experience?

A. Yes, sir, at least the universities where I served.

"fully integrated" expression of the parties' agreement and that any prior oral understandings could not be considered.

In this regard, it is important that our scope of review be clear. The question of integration vel non of a writing is for the trial court to determine as "a question of fact to be determined in accordance with all relevant evidence." RESTATEMENT (SECOND) OF CONTRACTS § 209 comment c. As the trial court expressly recognized in making its determination here, relevant factors are not only the writing itself but also "the conduct and language of the parties and the surrounding circumstances" (quoting *Stamenich v. Markovic, supra.*). Thus, like other issues of fact determined by the trial court, we treat the finding as "presumptively correct unless they are clearly erroneous or unsupported by the record. That presumption properly exists because the trial court heard the testimony and evaluated its credibility." *Edmund J. Flynn Co. v. LaVay*, 431 A.2d 543, 546 (D.C.1981) (citation omitted). While this is not a bench trial to which D.C.Code § 17–305 (1981) literally applies, we have applied the same principle to portions of jury trials where factual matters are determined by the trial court. *E.g., Nicholson v. United States*, 368 A.2d 561, 564 (D.C. 1977) (trial court's ruling on whether a declaration constitutes a spontaneous utterance is reversed only if clearly erroneous).

Here, the trial court presided over a trial lasting seven days in which both parties presented extensive evidence concerning the dealings between Ozerol and various officials of Howard. It invoked the proper standard for determining the issue of integration. It supported its conclusion with an extensive written order. Upon our review of the record, we cannot say that the trial court was clearly erroneous in ruling that the agreements were completely integrated.

## III.

Ozerol asserts that even if the written contract was integrated, it is voidable by him because it was signed under duress. As noted above, the principle is recognized in our holdings that a written contract is not controlling where "there is fraud, duress or mutual mistake." *Howard University v. Best, supra*, 484 A.2d 967. Likewise, RESTATEMENT (SECOND) OF CONTRACTS § 175, declares a contract voidable by a party whose assent was induced "by an improper threat by the other party that leaves the victim no reasonable alternative." However, as comment b to that section indicates, a "reasonable alternative" may take the form of a legal remedy. Moreover, "[s]ince alternative sources of funds are ordinarily available, a refusal to pay money is not duress, absent a showing of peculiar necessity." *Id.* Indeed, "[a] threatened breach of contract ordinarily is not in itself coercive." *Sind v. Pollin*, 356 A.2d 653, 657 (D.C.1976) (quoting *Tri–State Roofing Co. v. Simon*, 187 Pa.Super. 17, 142 A.2d 333, 335 (1958)). The burden was on Ozerol to prove duress as a ground for setting aside the contract he admittedly signed.[10] 13 WILLISTON ON CONTRACTS § 1627 at 811 (W. Jaeger ed. 1970). *Cf. Weaver v. DuPont*, 119 A.2d 716, 717 (D.C. 1956). Duress was not alleged in the complaint nor made a major issue at trial. Ozerol testified that he had incurred ex-

---

Q. So at the time you came to Howard you would have assumed that Howard had one also?

A. Definitely, yes.

Q. In your experience, what does the faculty manual generally contain?

A. Well, the laws and bylaws and rules and regulations for academic discharge and duties and ranks and the promotions and the grievances and, you know, it's regular things. I have been quite familiar with that.

10. Ozerol argues that Howard failed to address the duress issue in its motion for a directed verdict and hence is precluded from raising it on appeal. *District of Columbia v. Hickey*, 150 A.2d 463, 465–66 (D.C.1959). In the argument for a directed verdict on the basis that the writings were controlling, the issue was clearly raised of possible application of the exceptions recognized in *Howard University v. Best, supra.* While Howard spoke specifically only to evidence relating to fraud, we think it reasonable to view the motion as preserving generally the issue of the applicability of the exceptions to this case.

penses in moving to the District, that Howard told him he would not be paid without a written contract, and that he felt he had "no choice but to sign." This evidence could not constitute the basis for a finding that he had "no reasonable alternative" to signing.[11] *See Sind v. Pollin, supra,* (appellant's factual allegations and theory of economic coercion did not constitute duress as a matter of law).

*Affirmed.*

---

**11.** Nor does Ozerol attempt to reconcile with this claim of duress his signing of the virtually identical set of papers several months later.