The **FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for The National Bank of Washington, Plaintiff,**

v.

**Jeffrey MEYER, et al., Defendants.**

**Civ. A. Nos. 90–2202, 90–2203, 90–2208, 90–2210 through 90–2216, and 90–2220 through 90–2228, 90–2230.**

United States District Court, District of Columbia.

Jan. 23, 1991.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

### BACKGROUND

The Federal Deposit Insurance Corporation ("FDIC") brings this action to collect on promissory notes signed by certain former partners of the law firm of Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey ("Finley Kumble").[1] The promissory notes secured loans that the National Bank of Washington ("NBW") made in 1986 to the Finley Partners to enable them to purchase stock in the Merchant Bank of California. After Finley Kumble declared bankruptcy, certain of the Finley Partners defaulted on their loans and NBW filed lawsuits in the Superior Court for the District of Columbia against defendants to collect on their promissory notes.

On August 10, 1990, the Office of the Comptroller of the Currency declared the NBW insolvent, closed the Bank, and appointed the Federal Deposit Insurance Corporation ("FDIC") as Receiver. The FDIC then removed these cases to federal court on September 7, 1990 and moved for summary judgment against each defendant on the grounds that the Federal Deposit Insurance Act of 1950, § 2[13](e), 64 Stat. 889, as amended, 12 U.S.C. § 1823(e) (hereinafter § 1823(e)) provides special protections for the FDIC which bar all of the Finley Partners' defenses as a matter of law.

Twenty of the Finley Partners now oppose the FDIC's motion.[2] First, they argue that § 1823(e) does not bar their defense of economic duress. Second, they argue that § 1823(e) is not rationally related to the furtherance of a legitimate governmental objective and therefore violates the due

James A. Treanor, Judith A. Mather, Maria Leonard Olson, Dow, Lohnes & Albertson, Washington, D.C., for plaintiff.

Michael E. Friedlander, Jacqueline E. Zins, Amy F. Hancock, McDermott, Will & Emery, Washington, D.C., for defendants.

1. Also included as defendants were employees of professional corporations that were partners of Finley Kumble. All defendants will collectively be referred to as the Finley Partners.

2. On December 3, 1990, twenty-two defendants filed a unified opposition to the FDIC's motion. (Of those twenty-two, Lawrence Sherman and Lawrence Sherman, P.C., C.A. 90–2220, are counted as one defendant, as are Robert K. Wrede and Robert K. Wrede, Trustee, C.A. 90–

2222). Since then the FDIC has formally dismissed two of those defendants, Gerald Mehlman and Brenda Viehe-Naess, C.A. Nos. 90–2229 and 90–2219 respectively, pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure. Therefore, this Memorandum Opinion and accompanying Order apply only to defendants whose preconsolidation Civil Action Numbers are listed in the caption of this Memorandum Opinion.

process clause of the fifth amendment. There are no genuine issues of material fact. For the reasons set forth below, this Court finds that neither of the arguments of defendants has merit and that the FDIC is entitled to summary judgment against each of the 20 defendants as a matter of law.

## DISCUSSION

### I. *Defendants' Defense of Economic Duress*

■ The Finley Partners argue that the FDIC's motion for summary judgment should be denied because their defense of economic duress survives the effects of § 1823(e). They concede that § 1823(e) operates to place the FDIC in the position of a holder in due course, taking promissory notes free of personal defenses. They argue, however, that § 1823(e) does not extinguish real defenses set forth in the Uniform Commercial Code ("UCC") and that their economic duress defense constitutes such a real defense.

Defendants are correct that § 1823(e) bars personal defenses but not real defenses. The section provides that an agreement or condition [3] "which tends to diminish or defeat the interest of the Corporation" shall not be enforceable against the FDIC unless it meets a number of specific requirements. 12 U.S.C. § 1823(e) (emphasis added). As the Supreme Court explained in *Langley v. FDIC*, a real defense renders an instrument entirely void, leaving no interest that could be " 'diminish[ed] or defeat[ed].' " 484 U.S. 86, 93–94, 108 S.Ct. 396, 402–03, 98 L.Ed.2d 340 (1987). In contrast, personal defenses render a note voidable but not void. A bank holding a voidable note has and can transfer to the FDIC voidable title, which is enough to constitute "interest" in the note within the

meaning of § 1823(e). *See id.* at 94, 108 S.Ct. at 402–03.

Thus, if the Finley Partners' economic duress defense constitutes a real defense, then their promissory notes were void from the beginning. Asserting such a real defense could not "diminish or defeat" any interest of the FDIC because the FDIC did not have any interest to start with. On the other hand, if the Finley Partners' economic duress defense is a personal defense, then the FDIC received voidable title to the promissory notes from the NBW, which constitutes "interest" under § 1823(e). Asserting a defense against this interest, therefore, would "diminish or defeat" an interest of the FDIC, and § 1823(e) would prevent the defendants from asserting the defense.

The main legal question, then, is whether economic duress is a personal defense that rendered NBW's title to the promissory notes voidable, or a real defense that rendered its title entirely void. The Finley Partners suggest that duress of any nature constitutes a real defense, citing UCC § 3–305(2)(b) and several cases from outside of the District of Columbia. A careful reading of the UCC and its Official Commentary reveals that it does not make such a blanket classification.

First, § 3–305(2)(b) provides that holders in due course take free of all defenses except for "(b) *such* other incapacity, or duress, or illegality of the transaction, *as* renders the obligation of the party a nullity." (emphasis added). The words "such" and "as" indicate that the section is not stating that any type of duress renders an obligation to be a nullity. Rather, it suggests that only those types of duress that are so severe as to render it a nullity stand as exceptions to the rule that holders in due course take free of defenses.[4]

---

3. The courts have interpreted the word "agreement" broadly to include all conditions and defenses. *See Langley v. FDIC,* 484 U.S. 86, 90–93, 108 S.Ct. 396, 400–02, 98 L.Ed.2d 340 (1987).

4. Official Comment 6 supports this view of the words "such" and "as" in UCC § 3–305(2)(b). The first sentences state: "Duress is a matter of

degree. An instrument signed at the point of a gun is void, even in the hands of a holder in due course. One signed under threat to prosecute the son of the maker may be merely voidable, so that the defense is cut off." Clearly, the section is not placing all types of duress in the same category.

Of course, the question left open is what type of duress is severe enough to render it a nullity. Neither UCC § 3–305(2)(b) nor the Official Comment attempt to establish a rule governing which types of duress render a transaction void as opposed to merely voidable. Instead, Official Comment 6 declares that "[a]ll such matters are therefore left to the local law." Further supporting this point is the Commentary of Chancellor William D. Hawkland on UCC § 3–305(2)(b): "Unlike the case of infancy, these three defenses [incapacity, duress, illegality] may be raised only if *state* statutory or case law makes the transaction void from the outset and not merely voidable." Hawkland UCC Series § 3–305:05 (emphasis added). Finally, as defendants acknowledge when they cite *Sind v. Pollen,* 356 A.2d 653 (D.C.1976) for the District of Columbia's test for duress, federal courts follow state law precedent when deciding legal issues, which are not precluded by federal law, in the context of § 1823(e) cases. *See Federal Sav. and Loan Ins. Corp. v. Ziegler,* 680 F.Supp. 235, 237 (E.D.La.1988) ("In order for duress to vitiate consent, the duress must be 'of such a nature as to cause a reasonable fear of unjust and considerable injury to a party's person, property, or reputation.' La.Civ.Code Ann. art. 1959."); *cf. FDIC v. Turner,* 869 F.2d 270, 273–75 (6th Cir.1989) (applying § 47–3–305 and § 47–3–406 of the Tennessee Code to determine whether defendant could raise defense of fraud in factum, a real defense, rather than merely fraud in the inducement, a personal defense).

The Finley Partners do not cite any precedent from the District of Columbia that supports the view that economic duress renders a transaction void. In fact, they point out that in *Ozerol v. Howard University,* 545 A.2d 638, 643 (D.C.1988), the D.C. Court of Appeals quoted section 175 of the Restatement (Second) of Contracts which states that duress by threat (rather than by physical compulsion) renders a contract voidable rather than void. Although that case fails to distinguish between void and voidable contracts,[5] it calls attention to the Restatement's distinction between the two categories:

> Duress takes two forms. In one, a person physically compels conduct that appears to be a manifestation of assent by a party who has no intention of engaging in that conduct. The result of this type of duress is that the conduct is not effective to create a contract (§ 174). In the other, a person makes an improper threat that induces a party who has no reasonable alternative to manifesting his assent. The result of this type of duress is that the contract that is created is voidable by the victim (§ 175).

Restatement (Second) of Contracts, Introductory Note, Ch. 7, Topic 2.

■ The District of Columbia explicitly followed this distinction in *Williams v. Amann,* 33 A.2d 633, 634 (D.C.1943). In that case, the Municipal Court of Appeals for the District of Columbia stated that "[w]hatever duress may have existed at the time of the execution of the contract was that which operated only upon the mind of the appellant and did not involve physical compulsion. Therefore, the contract was voidable only; not void." 33 A.2d 633, 634 (D.C.1943). Given the fact that *Williams* and *Ozerol* both support the modern Restatement view, and that no D.C. cases have been found that hold to the contrary, the correct conclusion is that in the District of Columbia physical compulsion is the only type of duress that can render a transaction entirely void.

The Finley Partners do not allege that they were physically compelled to sign the promissory notes in question. They themselves labeled their defense as "economic" duress, and the substance of their allega-

---

5. The case focuses on the definition of duress— "an improper threat by the other party that leaves the victim no reasonable alternative"— and holds that a threat to withhold money due under the contract is not duress because the victim has the alternative of pursuing a legal remedy rather than giving in to the duress.

Although some of the language of the opinion sounds applicable to the case at bar, this Court does not reach the issue of whether the Finley Partners have alleged adequate facts to constitute duress at all, but assumes *arguendo* that they have done so.

tions are that they signed the notes because of the threat that their wages and standing in the firm would decrease if they refused. Such economic duress does not reach the level of physical compulsion capable of rendering a transaction entirely void. Thus, NBW held at least voidable title to the promissory notes when the FDIC took over as Receiver. Such voidable title constitutes an "interest" of the FDIC that § 1823(e) protects from being diminished or defeated. Thus, defendants' economic defense duress is not valid against the FDIC.

## II. *Due Process Challenge to § 1823(e)*

 The Finley Partners' second argument is that § 1823(e) violates the due process clause of the fifth amendment and that therefore this Court should invalidate the statute and deny the FDIC's motion for summary judgment. They do not directly challenge the objectives that Congress attempted to achieve in passing § 1823(e). Instead, they claim that the courts' broad interpretation of § 1823(e)—that the section extinguishes all personal defenses, including those that the FDIC knew about when it acquired the notes—is not rationally related to furthering those objectives.

A careful reading of relevant case law shows that a broad application of § 1823(e) does further the objectives that Congress was attempting to achieve when it passed the statute, and defendants do not challenge the legitimacy of those objectives. Defendants recognize that one legitimate objective of § 1823(e) is to protect the FDIC from secret agreements which would prevent the agency from properly evaluating the assets of a failed bank. Defendants' Brief at 13. They argue that if the FDIC knows about a personal defense at the time it purchases that asset, then the personal defense is not secret and the FDIC can and should be required to take it

into account when evaluating the asset's worth.[6]

What defendants seem to overlook is that knowledge of personal defenses *at the time of acquiring an asset* is not enough in order for the FDIC to adequately protect its funds. "The FDIC is an insurer of the bank, and is liable for the depositors' insured losses whether or not it decides to acquire the note." *Langley,* 484 U.S. at 95, 108 S.Ct. at 403. In barring all personal defenses except for conditions that have been part of the bank's official records from the time that they arose, § 1823(e) strives to prevent the FDIC from *ever* misevaluating the worth of an insured bank's assets.[7] As the Supreme Court explained in *Langley:*

> The harm to the FDIC caused by the failure to record occurs no later than the time at which it conducts its first bank examination that is unable to detect the unrecorded agreement and to prompt the invocation of available protective measures, including termination of the bank's deposit insurance. See § 1818 (1982 ed. and Supp. IV).

484 U.S. at 95, 108 S.Ct. at 403.

Applying that analysis to the case at bar, the fact that the FDIC knew about the Finley Partners' duress defenses when it became Receiver for the NBW is not dispositive. Equally important is whether the FDIC learned about the defense at a stage early enough that it would have been able to take protective measures before the NBW became insolvent. In passing § 1823(e), Congress decided that protecting the FDIC against agreements and conditions not recorded in the bank's records at the time they arose is the best way to ensure that the FDIC will be able to accurately evaluate a bank's assets at any time.

Defendants neither challenge the legitimacy of this objective, nor argue that § 1823(e) is not rationally related to achiev-

---

6. Defendants also seem to challenge the broad interpretation of the word "agreement" as including such personal defenses as duress and fraud in the inducement. Such an interpretation clearly furthers the purposes of § 1823(e), as the Supreme Court explained in *Langley,* 484 U.S. at 90–93, 108 S.Ct. at 400–02.

7. Congress has authorized the FDIC to make regular examinations of insured banks whenever it determines an examination is necessary. *See* 12 U.S.C. § 1820(b).

ing it. Clearly, § 1823 cuts down on the number of defenses that might operate to reduce the value of a bank's assets compared to how they appeared at earlier FDIC evaluations. Thus, defendants could not successfully argue that § 1823(e) in no way furthers the legitimate objective of helping the FDIC to accurately evaluate the banks that it insures.

Defendants' arguments focus on the analogy between § 1823(e) and the holder in due course doctrine. They state the principle that a holder in due course loses his preferred status if he takes a note with notice of a personal defense. They then argue that it is unfair if the FDIC can maintain its preferred status even if it took with notice of the personal defense.

It is true that some courts have rationalized § 1823(e) in terms of the holder in due course doctrine. *See Campbell Leasing, Inc. v. FDIC*, 901 F.2d 1244, 1250 (5th Cir.1990); *Chatham Ventures, Inc. v. FDIC*, 651 F.2d 355, 363 (5th Cir.1981). Nevertheless, the courts acknowledge that the analogy is not a perfect one. *Chatham*, 651 F.2d at 363; *see also Sunbelt Sav. v. Amrecorp Realty Corp.*, 742 F.Supp. 370, 371 (N.D.Tex.1990) ("the FDIC need not meet *any* traditional requirement for holder in due course status") (emphasis in original). As shown above, Congress was attempting to ensure that the FDIC would have notice of possible defenses the first time the FDIC conducted an examination, rather than at the time that the FDIC took the note. Because defendant does not challenge the legitimacy of this objective and because the Supreme Court carefully recognized and explained this objective in *Langley*, this Court accepts that government objective as legitimate.

Finally, defendants attempt to challenge the rationality of the specific requirements listed in §§ 1823(e)(1)–(4). Defendants' claims, however, are based on hypothetical situations rather than on the facts in controversy in the case in bar. Therefore, it would be improper for this Court to consider those claims.

## CONCLUSION

For the reasons discussed above, this Court finds that neither of the defendants' arguments has merit and that the FDIC is entitled to summary judgment as a matter of law. The defendants opposing the FDIC's motion for summary judgment (see footnote 2 above) are liable for the obligations they accepted when they signed the promissory notes. The FDIC is entitled to recover to the full extent of those obligations, as it requests in its motion for summary judgment.

An Order consistent with the foregoing has been entered this day.

## ORDER

We have considered plaintiff FDIC's motion for summary judgment, defendants' opposition, and the FDIC's reply. There being no genuine issues of material fact and in accordance with the foregoing Memorandum Opinion, it is by the Court this 23rd day of January, 1991,

ORDERED that plaintiff's motion for summary judgment is granted, and it is

ORDERED that summary judgment be entered against each of the twenty defendants and in favor of plaintiff, as requested in the prayer for relief at page 5 of the Complaints as follows:

(a) each of the twenty defendants shall pay plaintiff the aggregate amount of outstanding principal and accrued interest as of September 15, 1989 under the promissory note sued upon by plaintiff;

(b) each of the twenty defendants shall pay plaintiff interest on the foregoing amount from September 16, 1989 as provided under the promissory note sued upon by plaintiff and by law until the judgment is paid in full;

(c) each of the twenty defendants shall pay plaintiff an amount equal to (1) 15% of the unpaid balance of principal and interest under the promissory note as attorney fees, and (2) costs of this suit; and

(d) each of the twenty defendants shall pay plaintiff an amount equal to 2% per annum, in excess of the interest rate, com-

puted on the unpaid balance, and relating back to the due date of the promissory note sued upon; and it is

ORDERED that the above-captioned cases are dismissed with prejudice.