**SEGAL WHOLESALE,
INC., Appellant,**

v.

**UNITED DRUG SERVICE, Appellee.**

No. 04–CV–953.

District of Columbia Court of Appeals.

Argued May 5, 2006.
Decided Aug. 16, 2007.

Stephen B. Mercer, Rockville, MD, for appellant.

Anton M. Weiss, Washington, D.C., for appellee.

Before FARRELL and KRAMER, Associate Judges, and VINCENT,[*] Associate Judge, Superior Court of the District of Columbia.

KRAMER, Associate Judge:

This appeal involves a challenge to the trial court's dismissal of the appellant's breach of contract claim against the appellee. The appellant specifically claims that the trial court erred in entering a judgment as a matter of law based on the statute of frauds. We affirm the trial court's order dismissing the appellant's claim, though for a reason different from that relied on by the trial court.[1]

The appellant, Segal Wholesale, Inc. ("Segal"), is a tobacco wholesaler headquartered in Minneapolis, Minnesota that owns several retail stores in northern Virginia where it sells tobacco goods. The appellee, United Drug Service ("UDS"), is a convenience store wholesaler[2] headquar-

---

[*] Sitting by designation pursuant to D.C.Code § 11–707(a) (2001).

1. "As always, we are free to sustain the trial court judgments on grounds different from those on which the trial court relied." *District of Columbia v. Acme Reporting Co.,* 530 A.2d 708, 712 (D.C.1987).

2. At trial, UDS's chief executive officer explained the business:
   [A]nything that you would see in a convenience store, we would sell that. Cigarettes, candy, beverages, health and beauty aids, snack foods. Anything that you would see in a convenience store, plus some other items, that's what we would sell, and our number one customer would be a convenience store.
Later in the testimony, he also stated that approximately "75 to 80 percent" of UDS's business was selling cigarettes.

tered in Washington, D.C., that sold tobacco goods to Segal for approximately two years. Thereafter, UDS filed a breach of contract claim in the Superior Court against Segal, alleging that Segal had failed to render payment on the final shipment of goods. In turn, Segal filed a counterclaim against UDS, alleging that UDS had overcharged it for the goods in breach of an oral agreement between the parties.

The sales relationship between Segal and UDS began in June 2000, when two sales representatives from UDS met with a representative from Segal to discuss a potential business arrangement. At the end of that meeting, a preliminary agreement was reached between the parties that UDS would sell goods to Segal's northern Virginia stores. The parties do not dispute that they agreed on a price for the goods, but the details of that agreement form the basis of this controversy. Segal claims that it agreed to purchase goods from UDS for a sale price that was two cents below the competition's best price. While UDS acknowledges that agreement, it claims that price only pertained to the initial shipment of goods and did not extend through the duration of the sales relationship.

There is also some evidence that Segal's owner spoke with UDS's CEO on at least one occasion over the telephone about this deal. Segal's owner claimed that they reached an agreement regarding the sale price of the goods during this conversation as well, the terms of which correspond somewhat with Segal's version of the price agreement at the June 2000 meeting between the representatives. At trial, however, UDS's CEO was never questioned about the agreement and essentially denied having made or approved of any such deal.

During the two years that Segal and UDS did business together, Segal's representatives would place weekly orders for goods and UDS would process and deliver those orders to the northern Virginia stores. This arrangement ended, however, when Segal was solicited by another tobacco wholesaler and was offered a sale price that was, by its account, much lower than what it had been paying UDS for the same goods. After some communication between the parties regarding the sale price, Segal ceased doing business with UDS and refused to pay for the final shipment of goods. UDS thus filed its complaint in the Superior Court.

At trial, UDS presented evidence that Segal had not rendered payment on the final shipment of goods, which Segal did not refute. Segal instead put on evidence to show that the parties had, at their initial meeting, agreed upon a set sale price and that UDS had deviated from that agreement by overcharging it during the two years the parties had done business. Segal claimed damages in the amount that it asserted it had paid in excess of the agreed-upon price. The jury returned a verdict in favor of UDS, awarding it the amount due for the final shipment of goods plus attorneys fees and interest. The jury deadlocked, however, on Segal's counterclaim, and the trial court declared a mistrial on that claim.

Thereafter, UDS renewed its motion for judgment as a matter of law initially made at trial on Segal's remaining breach of contract claim. After a hearing on the motion, the trial court issued a written order entering judgment as a matter of law on Segal's counterclaim. In doing so, the court explained that it "adopt[ed] UDS's argument as its rationale and dismisse[d] the counterclaim based on the

statute of frauds."[3] Segal appealed the dismissal of its claim.

Segal argues on appeal that the trial court erred in granting the judgment as a matter of law because its claim is not barred by the District of Columbia's statute of frauds. UDS, however, argues that the judgment as a matter of law should be affirmed based on the same grounds it argued in the trial court, namely, that the claim is barred by the statute of frauds and the parol evidence rule. We review the judgment as a matter of law *de novo*, viewing the record in the light most favorable to the non-moving party. *Caulfield v. Stark*, 893 A.2d 970, 973–74 (D.C.2006) (citing *Washington Metro. Transit Auth. v. Jeanty*, 718 A.2d 172, 174 (D.C.1998)). Judgment as a matter of law is appropriate where "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on [an] issue," D.C.Super. Ct. Civ. R. 50(a)(1), or, in other words, "only when the material facts are undisputed and when reasonable jurors could reach only one possible conclusion based on those facts." *Caulfield, supra,* 893 A.2d at 973–974 (quoting *Bushong v. Park,* 837 A.2d 49, 53 (D.C.2003)).

### Statute of Frauds

The statute of frauds requires that contracts for the sale of goods for over $500 be memorialized by "some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought" in order to be enforceable. D.C.Code § 28:2–201(1) (2001). There are three exceptions to this rule, which make "[a] contract which does not satisfy the requirements of [the general statute of frauds] but which is valid in other respects ... enforceable."

(a) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or

(b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or

(c) with respect to goods for which payment has been made and accepted or which have been received and accepted.

D.C.Code § 28:2–201(3).

### Parol Evidence Rule

■ A completely separate doctrine, the parol evidence rule, establishes that "extrinsic or parol evidence which tends to contradict, vary, add to, or subtract from the terms of a written contract must be excluded." *Affordable Elegance Travel, Inc. v. Worldspan,* 774 A.2d 320, 327 (D.C. 2001) (quoting *Fistere, Inc. v. Helz,* 226 A.2d 578, 580 (D.C.1967)). Such evidence "is inadmissible to vary or contradict the terms of a valid, and plain and unambiguous, written contract." *Id.* (quoting 17A Am. Jur.2d *Contracts* § 402 (1991)). In this jurisdiction, the parol evidence rule for sales states:

---

**3.** In its written motion for judgment as a matter of law, UDS made the same arguments as it does now on appeal. Specifically, it argued that Segal's claim was legally barred by the statute of frauds and the parol evidence rule, and that there was no further evidence presented at trial tending to prove its claim.

Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement. . . .

D.C.Code § 28:2–202 (2001). In other words, "when the parties to a contract have reduced their entire agreement to writing, the court will disregard and treat as legally inoperative parol evidence of the prior negotiations and oral agreements." *Stamenich v. Markovic*, 462 A.2d 452, 455 (D.C.1983) (quoting *Giotis v. Lampkin*, 145 A.2d 779, 781 (D.C.1958)).

### Applicability of Parol Evidence Rule

▆▆ In order to determine whether the parol evidence rule applies in a given case, we look to whether the written agreement was intended to be a complete statement of the terms of the agreement or rather was intended to be something less. In ascertaining the parties' intent, we consider "the written contract, the conduct and language of the parties and the surrounding circumstances." *Id.* (citing *Standley v. Egbert*, 267 A.2d 365, 367 (D.C. 1970)). Furthermore, where a "document is facially unambiguous, its language should be relied upon as providing the best objective manifestation of the parties' intent." *Hercules & Co. v. Shama Rest. Corp.*, 613 A.2d 916, 927 (D.C.1992) (quoting *1010 Potomac Assocs. v. Grocery Mfrs. of Am. Inc.*, 485 A.2d 199, 205 (D.C.1984); citing *Bolling Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 475 A.2d 382, 385 (D.C. 1984)).

### Complete versus Partial Integration

▆▆ Moreover, we must decide whether the parties intended the contract to be completely integrated or only partially integrated:

A completely integrated agreement is one adopted by the parties as a complete and exclusive statement of the terms of the agreement. It is contrasted with a partially integrated agreement, where the writing represents the agreement of the parties with respect to the matters stated therein but where there may be additional consistent oral terms.

*Ozerol v. Howard Univ.*, 545 A.2d 638, 641 (D.C.1988). No extrinsic evidence may be introduced for a completely integrated agreement, but evidence *consistent* with the terms of a *partially* integrated agreement is permissible. See D.C.Code § 28:2–202. Whether an agreement is integrated is a factual determination, to be made by the trial judge, which in turn establishes whether parol evidence is admissible to the jury. See *Ozerol, supra*, 545 A.2d at 643.

### Applicability of the Statute of Frauds

▆▆ We agree with Segal that his claim is not barred by the statute of frauds because the contract in this case complies with the statute in three different ways. First, the invoices presented as evidence at trial are writings that sufficiently memorialized the terms of the agreement. See D.C.Code § 28:2–201(1). Second, UDS, the party against whom enforcement in this matter is sought, has conceded that there was an agreement for the sale of goods, thereby complying with D.C.Code § 28:2–201(3)(b). Finally, Segal has received, accepted and paid for the goods at issue, which also makes the contract compliant with the statute of frauds under D.C.Code § 28:2–201(3)(c). The agreement at issue in this case therefore complies with the statute of frauds and is an enforceable contract.

### *Applicability of the Parol Evidence Rule*

 The remaining issue for our consideration is whether Segal's claim was precluded by the parol evidence rule. In order to make this determination, we must examine the agreement between the parties to ascertain their intent.[4] The record on appeal contains a copy of the first page of the final sales invoice, a written memorialization of the agreement that clearly details the prices UDS had charged Segal for each item. The evidence also indicates that Segal received similar invoices for all of the other shipments and promptly paid the stated prices for over two years.

 We cannot conclude that the agreement in this case was completely integrated because the invoices are not "a complete and exclusive statement of the terms of the agreement." *Ozerol, supra,* 545 A.2d at 641. The invoice in the record includes terms like quantity, price, and a description of the goods, but omits other necessary terms such as the method or timing of delivery. The invoice is very clear, however, on the terms it does contain and adequately "represents the agreement of the parties with respect to the matters stated therein." *Id.* We therefore conclude that the agreement between Segal and UDS, as evidenced by the invoice, was partially integrated and that the parties are thus bound by the terms included in the agreement.

The prices in the sales invoices were unambiguously specified, and, with the exception of the last invoice, all were paid by Segal. They therefore "may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement." D.C.Code § 28:2–202. For that reason, the trial court did not err in precluding Segal from presenting evidence to the jury on its claim that UDS breached a previous oral agreement to sell the goods for a different price other than what was later charged and ultimately paid.[5] Moreover, the trial court appropriately granted judgment as a matter of law since Segal would not have been able to substantiate its claim with any admissible evidence. Accordingly, the trial court's order is hereby

*Affirmed.*

---

4. The trial court did not make findings specific to the parol evidence rule but did incorporate UDS's arguments for judgment as a matter of law, which included the application of the parol evidence rule.

5. Furthermore, even if there were some presale negotiations or an agreement as to what the selling price of the goods would be, Segal assented to any change in the price term by its performance in the sale. *See* D.C.Code §§ 28:2–204, 606(1)(b).