## UNITED STATES v. REED.

### SAME v. CLARKE.

### SAME v. THOMPSON.

### SAME v. NOWELL et al.

### Nos. 1–4.

Municipal Court of Appeals for the District of Columbia.

Nov. 23, 1942.

Charles B. Murray, Asst. U. S. Atty., of Washington, D. C. (Edward M. Curran, U. S. Atty., and Grace B. Stiles and John P. Burke, Asst. U. S. Attys., all of Washington, D. C., on the brief), for appellant.

Louis Ginberg, of Washington, D. C. (Dorsey K. Offutt, of Washington, D. C., on the brief), for appellee, in No. 4.

No appearance for appellees in Nos. 1, 2 and 3.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

RICHARDSON, Chief Judge.

Four separate actions were brought by the United States as plaintiff against the several defendants as makers of certain installment notes held by the Federal Hous-

ing Administration. Default in payment had occurred in each case and judgments were entered by the trial court by consent of the appellee Nowell and by default in the other cases for the unpaid balances of principal and interest.

The issue presented in this appeal arose on the disallowance by the trial court in each case of the item of attorney's fees claimed by the plaintiff under the terms of the respective notes. In the Nowell case counsel for the defendant opposed the allowance of an attorney's fee by the trial court. The objection was sustained and the disallowance noted in the judgment. In entering default judgments in the other three cases attorney's fees were also denied.

Upon motion in this court the four cases were consolidated.

The notes in suit in Nos. 1, 2 and 3 in identical language provide:

"The maker or makers further agree * * * if this note or any installment thereon is not paid at its maturity, to pay *all costs of collection including cost of suit and fifteen per cent of the amount in default as an attorney's fee.* This note is made in accordance with the provisions of the National Housing Act and under regulations of the Federal Housing Administration." (Italics supplied.)

The Nowell note, evidencing a Maryland transaction, contains the following clause: "The maker or makers, * * * hereby authorize and (any) court in Maryland or elsewhere, to enter judgment hereon by confession before, at, or after maturity, against us, jointly or severally, in favor of the holder for the unpaid balance, including interest, costs *and an attorney's fee of ten per centum,* expressly waiving summons or other process." (Italics supplied.)

On the face of the note appear the words: "Modernization Loan under National Housing Act."

The four notes represent loans made by banking institutions for the modernizing of homes under Title I of the National Housing Act of June 27, 1934, 48 Stat. 1246, c. 847, 12 U.S.C.A. § 1701 et seq., as amended.

█ Notice of this fact, if specific evidence of such notice be required, was given by the above quoted language of the notes. In interpreting the provisions of these notes they must be considered in the light of this legislation, the regulations promulgated by its authority, and the executive action in carrying out its provisions.

Title I of the Act provides, § 2(a) for the insurance of approved private financial institutions against losses sustained as a result of loans made to home owners for the purpose of financing alterations, repairs and improvements, subject to the following among other conditions: "The total liability which may be outstanding at any time plus the amount of claims paid in respect of all insurance heretofore and hereafter granted under this section and section 6, as amended, less the amount collected from insurance premiums and other sources and deposited in the Treasury of the United States under the provisions of subsection (f) of this section, shall not exceed in the aggregate $165,000,000."

Section 2(c) (1) authorizes the Administrator to collect, compromise or sell any evidence of debt or security assigned to him in connection with the payment of insurance "until such time as such obligations may be referred to the Attorney General for suit or collection."

Section 2(f) provides for the deposit of all moneys received from the collection of such debts in a special account of the Federal Housing Administration in the Treasury of the United States, which account is made available for the payment of the operating expenses of the Administration under Title I and the payment of claims in connection with insurance under that title.

Section 1 of the Act provides that the Administrator may "utilize such Federal officers and employees, and, with the consent of the State, such State and local officers and employees, and appoint such other officers and employees as he may find necessary, and may prescribe their authorities, duties, responsibilities, and tenure and fix their compensation, without regard to the provisions of other laws applicable to the employment or compensation of officers or employees of the United States."

Pursuant to these several provisions of Title I the Federal Housing Administration acts as an insurer of what are termed "modernization" loans, enabling approved banks and financial institutions throughout the United States to extend credit upon the personal responsibility of home owners who without security might otherwise be subjected to excessive discounts and financial charges. This function established under the provisions of Title I of the Act is made a separate unit of the Federal Housing

Administration and its financial operations are expressly segregated not only by the limitation of the total fund to be employed, but by the creation of a special account in the Treasury in which all receipts are to be deposited and out of which expenses and insurance claims are payable.

Under the authority of Section 1 the Administrator may utilize Federal officers and employees and fix compensation without regard to limitations imposed by other laws applicable to their employment or compensation. Such compensation must be paid out of the foregoing special account. Section 2(c) (1) contemplates that when other means of collection of notes taken over by the Administration under its insurance plan are unavailing they are to be referred to the Attorney General for suit. In employing the services of the Attorney General to this end, including of course the law officers of his department, the Administrator has fixed his annual compensation or fee at $50,000, which amount has been paid each year including the fiscal year commencing July 1, 1942.[1]

This charge against the funds available for the purposes specified in Title I of the Federal Housing Act is directly attributable to cases such as those now in suit. The question here therefore is not whether the Federal Government may recover under an attorney's fee provision in a promissory note because of its payment of salaries to attorneys employed in its legal departments, but whether the payment of a specific sum out of a special fund, by one Government instrumentality to the Department of Justice for legal services may be regarded as the payment of an "attorney's fee".

Transactions between different branches of Government may result in legal consequences similar to those which would arise between individuals.

In United States v. State of New York, 160 U.S. 598, 16 S.Ct. 402, 411, 40 L.Ed. 551, the state furnished in an emergency money which the United States was liable to reimburse. State officials borrowed the amount from a special fund which the law required to be invested at interest, and thereafter paid equivalent interest out of its general funds. This, it was held, created an obligation on the part of the United States to repay not only the principal but the interest so paid, the court recognizing the creation of a legal obligation as between different branches of the State Government. It was not, the court said, "the case of the state taking money out of one pocket to supply a deficiency in another".

The validity of stipulations in promissory notes for the payment of attorney's fees in the event of default has been upheld in Maryland[2] and is supported by the weight of decision in the State and Federal Courts.[3] It has been universally recognized in this jurisdiction in our trial courts and inferentially by our Court of Appeals in the case of Lockwood v. Lindsey, 6 App.D.C. 396.

Such provisions, however, are sustained only as an indemnity for the reasonable fees necessarily and properly paid or incurred. The question of what constitutes a reasonable fee depends upon the circumstances of each case. If the court deems it necessary, or if either party desires, testimony may be taken as to the

[1] "Federal Loan Agency, Federal Housing Administration, Dr.

To    Department of Justice

| Date of Delivery | Articles or Services | Amount Dollars cents |
|---|---|---|
| Fiscal Year 1943 | Advance of funds to cover cost of collection activities and other service in connection with defaulted notes acquired by the Federal Housing Administration as the result of payment of insured losses to Financial Institutions under the provisions of Title I, Section 2, of the National Housing Act, and Amendments, and referred to the Department for action. | $50,000 00 |

Total $50,000 00"

The above voucher is the one for the current year and evidences the method of payment.

As to the right of the court to take judicial notice of the essential matters referred to, see Shapleigh et al. v. Mier, 299 U.S. 468, 57 S.Ct. 261, 81 L.Ed. 355, 113 A.L.R. 253 and annotation.

In Wilson v. Shaw, 204 U.S. 24, 27 S.Ct. 233, 51 L.Ed. 351, the Supreme Court took judicial notice of the payment of the agreed compensation to the Panama Canal Company pending the appeal, rendering that phase of the suit for injunction a moot question.

[2] Maryland F. & M. Co. v. Newman, 60 Md. 584, 45 Am.Rep. 750.

[3] Citizens National Bank v. Waugh, 4 Cir., 1935, 78 F.2d 325, 100 A.L.R. 939, and cases cited.

676

nature of the services rendered, and the reasonable value thereof.[4]

To guard against possible oppression and injustice this rule must apply, although defendant defaults; for this is but a reasonable exercise of the power of a trial judge to prevent allowance of excessive fees. But here the question of reasonableness was never reached, because the trial judge, upon the record as presented, refused to allow *any* attorney's fee.

█ We deem it unnecessary to pass upon the question whether if a note had been the property generally of the United States and the suit for its collection prosecuted by public officers, compensated by salary, an attorney's fee would be recoverable. We decide that under the circumstances of this case, where the note belongs to a special fund to which its proceeds will go, where fees have been paid for the services of counsel in bringing the suit, which will be partly reimbursed by the allowance, the appellant is entitled to recover a reasonable fee, to be fixed by the trial court.

The judgments, as to the disallowance of attorney's fees, will be reversed and the cases remanded with instructions to the trial court to allow a reasonable attorney's fee in each case in accordance with the foregoing opinion.

Reversed.

[4] Merchants' Bank v. Thomas, 5 Cir., 121 F. 306, 312; Chestertown Bank of Maryland v. Walker, 4 Cir., 13 F. 510, 511, 513; Mechanics'-American National Bank v. Coleman, 8 Cir., 204 F. 24, 29; In re Peerless Weaving & Throwing Co., D. C., 259 F. 610.