UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WACO, INCORPORATED, a Virginia
Corporation,
Plaintiff-Appellee,

v.

GEOENERGY INTERNATIONAL
CORPORATION, a Washington                    No. 96-1378
Corporation,
Defendant-Appellant,

and

J. M. HUBER CORPORATION,
Party in Interest.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CA-95-472-3)

Argued: May 6, 1997

Decided: July 10, 1997

Before HAMILTON and MOTZ, Circuit Judges, and LEGG,
United States District Judge for the District of Maryland,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Thomas William Hayton, TOUSLEY BRAIN, Seattle,
Washington, for Appellant. William Delaney Bayliss, WILLIAMS,

MULLEN, CHRISTIAN & DOBBINS, Richmond, Virginia, for Appellee. **ON BRIEF:** Janis Orfe, DUNN, MCCORMACK, MAC-PHERSON & ORFE, Fairfax, Virginia, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

I.

This appeal was taken from a Final Judgment Order entered by Senior Judge Richard L. Williams, United States District Court for the Eastern District of Virginia, Richmond, on March 13, 1996. The suit arose out of a contractual dispute between Waco, Inc. ("Waco") and Geoenergy International Co. ("Geoenergy") involving the construction of a manufacturing plant in Crystal Hill, Virginia. In February 1994, the project owner, J.M. Huber Corporation, hired Geoenergy to install four industrial air cleaning machines (known as wet electro-static precipitators ("precipitators")) at the plant. According to Geoenergy's project schedule, electrical installation for the precipitators was to begin by October 31, 1994 (and be completed by December 6, 1994).

On November 3, 1994, Geoenergy sent Requests for Quotation to seven electrical contractors, inviting bids to perform the electrical installation work. Only two of the seven contractors responded. One contractor, Master Electrical Services, Inc., provided a fixed-price bid of $338,000. The other contractor, Port City Electrical Co. provided a time-and-materials quote of $619,000. Geoenergy rejected both of the bids.

On or about November 11, 1994, Geoenergy approached Waco (which was already working on the project as an electrical subcon-

tractor for another company) about the possibility of Waco performing the electrical installation. Representatives of Geoenergy (Mr. Darrell Dare) and Waco (Mr. Wilson Brittle) met at the construction site on November 15, 1997 and discussed the project.

During the two-day bench trial before Judge Williams, the parties presented conflicting versions of the negotiations between Messrs. Brittle and Dare. It was undisputed that Mr. Brittle and Mr. Dare, in light of the urgency of the electrical installation, agreed not to wait for Waco to prepare a precise, fixed-price quote for the work but to proceed on a time-and-materials basis.

Waco maintained that Messrs. Brittle and Dare agreed to proceed with an <u>uncapped</u> time-and-materials quote (with Waco submitting daily labor reports and material purchase invoices for Geoenergy's approval). Geoenergy, however, contended that Messrs. Brittle and Dare agreed to cap Waco's reimbursement at $150,000.00.

Geoenergy argued that the $150,000.00 cap was memorialized in a November 21, 1994 purchase order issued by Geoenergy (but never signed by Waco) which contained the notation "Total NTE 150,000.00." Geoenergy claimed that NTE stood for "not to exceed" and that the parties had agreed that the cap would be raised only if there was a change in the scope of the work. Waco, however, maintained that when Mr. Brittle received the purchase order, he immediately telephoned Mr. Dare to inquire about the meaning of the "NTE" and was informed that the purchase order was just "to get you started" and the amount would be increased as necessary.

Waco proceeded with the electrical work, submitting daily labor and material reports which were approved by Geoenergy. In mid-January, Geoenergy issued a new purchase order,"[i]ncreas[ing] the NTE limit by $50,000 to a total of $200,000 NTE." After Waco subsequently notified Geoenergy that its billings would exceed $200,000, a dispute arose between Waco and Geoenergy over the costs of the project.

At trial, Waco contended that Geoenergy stated that it would pay $260,000 and then work with Waco to reach a fair and equitable resolution of any remaining charges. Geoenergy, however, maintained

3

that the parties agreed to a final compromise of $260,000, but that Waco refused to sign the memorializing letter.

Despite this dispute, Waco completed the project, at which time Geoenergy refused to pay Waco more than $200,000. Waco subsequently filed its action in the Eastern District of Virginia. After a two-day bench trial, Judge Williams made his findings of fact, essentially accepting Waco's version of events, and entered judgment in favor of Waco. In reaching this decision, Judge Williams concluded that "[t]he contract between Waco and GeoEnergy was not an integrated contract; therefore the parol evidence rule does not apply." (J.A. 426).

In its appeal of the judgment, Geoenergy claims that Judge Williams erred: (1) in accepting extrinsic evidence to construe the parties' contract; (2) in his interpretation of that extrinsic evidence (assuming, arguendo, that the evidence was permissible); and (3) in restricting Geoenergy's evidence on the reasonableness of Waco's costs.

We have carefully reviewed the record, the parties' briefs, and heard oral argument in the case. Only one contention requires our attention: whether Judge Williams erred in concluding that the parties' contract was not integrated (and, thus, that he was permitted to consider parol evidence in interpreting the contract). We affirm on the reasoning of the district court.

II.

> The parol evidence rule is best understood in light of its purpose: to give legal effect to whatever intention the parties may have had to make their writing at least a final and perhaps also a complete expression of their agreement. If the parties had such an intention, the agreement is said to be "integrated," and the parol evidence rule bars evidence of prior negotiations for at least some purposes. If the parties had no such intention, the agreement is said to be "unintegrated," and the parol evidence rules does not apply.

E. ALLEN FARNSWORTH, CONTRACTS § 7.3 (2d ed. 1990). See also Shevel's, Inc. v. Southeastern Assoc., Inc., 320 S.E.2d 339, 343

4

(Va. 1984) ("Where the entire agreement has not been reduced to writing, parol evidence is admissible, not to contradict or vary its terms but to show additional independent facts contemporaneously agreed upon, in order to establish the entire contract between the parties") (quoting Renner Plumbing v. Renner, 303 S.E.2d 894, 898 (Va. 1983)).

Thus, whether a contract is integrated or not is a question of fact, turning on the intent of the parties. RESTATEMENT (2d) OF CONTRACTS § 209 cmt. c (1981). Here, Judge Williams, after hearing the conflicting evidence, concluded that the writings exchanged by the parties (in particular, the two purchase orders containing the "NTE" notations) were not completely integrated. Judge Williams' factual finding is entitled to deference and is to be upset only if clearly erroneous. Fed. R. Civ. P. 52(a). See also Federal Deposit Ins. Corp. v. Hadid, 947 F.2d 1153, 1156 (4th Cir. 1991). Having reviewed the record and taken oral argument, this Court concludes that Judge Williams' finding is not clearly erroneous, but is amply supported by the record.*

III.

Accordingly, the judgment of the district court is

AFFIRMED.

_____

*Indeed, at oral argument Geoenergy's counsel conceded that, because of the urgency of the project, many of the documents normally found in a construction contract were never drafted.

5