*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-CV-1382

RUFUS AND DELORES STANCIL, APPELLANTS,

V.

FIRST MOUNT VERNON INDUSTRIAL LOAN ASSOCIATION, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAR-6061-11)

(Hon. John M. Mott, Trial Judge)

(Submitted June 6, 2013                    Decided March 13, 2014)

*Harry T. Spikes, Sr.* was on the brief for appellants.

*Thomas J. Kokolis* was on the brief for appellee.

Before BLACKBURNE-RIGSBY and MCLEESE, *Associate Judges*, and NEBEKER, *Senior Judge*.

Opinion for the court by *Associate Judge* MCLEESE.

Dissenting opinion by *Senior Judge* NEBEKER at page 18.

MCLEESE, *Associate Judge*: Appellants Rufus and Delores Stancil brought this action against appellee First Mount Vernon Industrial Loan Association ("FMV"). The Stancils initially sought to prevent FMV from foreclosing on a

commercial property that the Stancils had purchased. After the trial court declined to prevent a foreclosure sale, the Stancils sought to recover damages, claiming among other things that FMV had made fraudulent misrepresentations and had breached an oral agreement to forbear from foreclosure. The trial court granted FMV's motion to dismiss the amended complaint for failure to state a claim, and the Stancils appealed. We affirm in part and reverse in part.

**I.**

Because we are reviewing an order granting a motion to dismiss for failure to state a claim, we take the facts as alleged in the complaint. *Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58, 62 (D.C. 2005). According to the complaint, the Stancils borrowed $500,000 from FMV in April 2009 to purchase a property in the District of Columbia. The note executed in connection with the transaction provided for an annual interest rate of 18% and a default annual interest rate of 24%.

After concluding that the Stancils were in default, FMV took steps to foreclose on the property. In June 2011, however, the Stancils and FMV entered into an oral contract pursuant to which the Stancils paid FMV $170,000 and FMV

agreed to modify the terms of the note and to forbear from foreclosing on the property. The $170,000 payment reflected a $100,000 charge for attorney's fees, a $20,000 fee to FMV, and $50,000 payment as consideration for the forbearance agreement. The $100,000 charge for attorney's fees related to a provision in the note making the Stancils responsible, in the event of a default, for "all costs of collections, including . . . attorney's fees of at least 20% of the outstanding indebtedness . . . ." Before the Stancils made the $170,000 payment, FMV promised to reduce the forbearance agreement to writing, and the Stancils relied on that promise in making the payment. Despite its promise, FMV failed to reduce the forbearance agreement to writing. FMV later foreclosed on the property, which was sold in January 2012.

In pertinent part, the complaint raises the following claims: (1) fraudulent misrepresentation with respect to the $100,000 charge for attorney's fees, because there was no evidence that FMV incurred expenses for attorney's fees, and the "fee was unnecessary, inappropriate, . . . not default service related[,] and . . . clearly fraudulent . . . ."; (2) fraudulent misrepresentation with respect to the $50,000 payment for foreclosure forbearance, because FMV refused to acknowledge receipt of the payment; (3) wrongful foreclosure, because the foreclosure violated various statutory requirements and was a breach of the oral forbearance agreement; (4)

breach of the oral forbearance agreement; and (5) fraudulent misrepresentation, because FMV never intended to honor the oral forbearance agreement.[1]

The trial court granted FMV's motion to dismiss the complaint for failure to state a claim. As to the claim of fraudulent misrepresentation with respect to the $100,000 charge for attorney's fees, the trial court concluded that the Stancils had not identified any false statement upon which they had relied. As to the claim for wrongful foreclosure, the trial court rejected the Stancils' statutory claims, which the Stancils have not renewed on appeal. The trial court did not expressly address the Stancils' claim that the foreclosure was wrongful because it violated the oral forbearance agreement.[2] As to the claim of breach of the oral forbearance agreement, the trial court relied on the statute of frauds, D.C. Code § 28-3502 (2012 Repl.) (action may not be brought to enforce agreement concerning real estate unless agreement is in writing). The trial court acknowledged that oral agreements concerning real estate may in some circumstances be enforceable on estoppel grounds, but saw no basis for estoppel in this case. Finally, with respect

___

[1] The Stancils also raised other claims and theories that are no longer at issue.

[2] The claim of wrongful foreclosure based on the oral forbearance agreement appears to be largely duplicative of the claim of breach of contract resting on the same agreement. As we discuss *infra*, the trial court did address the latter claim, concluding that the claim was barred by the statute of frauds.

to the claims of fraudulent misrepresentation regarding the oral forbearance agreement, the trial court relied on the parol-evidence rule, which precludes introduction of "extrinsic or parol evidence which tends to contradict, vary, add to, or subtract from the terms of a written contract . . . ." *Segal Wholesale, Inc. v. United Drug Serv.*, 933 A.2d 780, 783 (D.C. 2007) (internal quotation marks omitted).

## II.

This court reviews de novo the trial court's decision to dismiss a complaint for failure to state a claim. *See Jordan Keys & Jessamy*, 870 A.2d at 62. We accept the allegations in the complaint as true and view all facts and draw all reasonable inferences in favor of the plaintiff. *Id.*

## A.

We affirm the trial court's dismissal of the claim of fraudulent misrepresentation as to the $100,000 charge for attorney's fees (count II). "To prove a claim of fraudulent misrepresentation, [plaintiffs] must prove (1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its

falsity, (4) with the intent to deceive, and (5) action taken by [the plaintiffs] in reliance upon the representation, (6) which consequently resulted in provable damages." *Railan v. Katyal*, 766 A.2d 998, 1009 (D.C. 2001) (internal quotation marks omitted). With respect to the charge for attorney's fees, the trial court correctly concluded that the Stancils did not identify any fraudulent misrepresentation upon which they detrimentally relied. To the contrary, the $100,000 charge was based on the express language of the note, which provides that, in the event of a default, the Stancils would be responsible for "all costs of collections, including . . . attorney's fees of at least 20% of the outstanding indebtedness . . . ." We agree with the trial court that the complaint did not state a claim of fraudulent misrepresentation with respect to attorney's fees. *See, e.g.*, *Schiff v. American Ass'n of Retired Persons*, 697 A.2d 1193, 1198 (D.C. 1997) (upholding dismissal of fraud claim, where complaint did not sufficiently allege that defendant made false representation).

On appeal, the Stancils suggest in passing that the fee provision is unconscionable and that the note should not be interpreted to permit a charge for attorney's fees that exceeds the actual amount of the attorney's fees incurred by

FMV. The Stancils, however, do not brief those claims on the merits.[3] Nor do the Stancils address the question whether the complaint adequately raised those claims. We therefore do not view those issues as properly before us. *See, e.g.*, *Arroyo-Torres v. Ponce Fed. Bank*, 918 F.2d 276, 279 (1st Cir. 1990) (in upholding dismissal of complaint, court declines to consider claims presented for first time on appeal); *Bardoff v. United States*, 628 A.2d 86, 90 n.8 (D.C. 1993) (issues raised in brief but not supported by argument are considered abandoned); D.C. App. R. 28 (a)(8)(A) (2013) (appellant's brief must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

---

[3] Although the Stancils do not cite it, there is support for the suggestion that FMV was not entitled to receive payment in excess of the fees actually incurred. *See F.D.I.C. v. Bender*, 326 U.S. App. D.C. 390, 395-96, 127 F.3d 58, 63-64 (1997) ("Unlike some jurisdictions, which hold that a contractual provision for a fixed percentage to be paid as attorneys' fees is enforced according to its terms, . . . the D.C. Court of Appeals has long held . . . that in the District such provisions are sustained 'only as an indemnity for the reasonable fees necessarily and properly paid or incurred,' . . . .") (quoting *United States v. Reed*, 31 A.2d 673, 675 (D.C. 1942)); Richard A. Lord, 24 *Williston on Contracts* § 65.23, at 324-25 (4th ed. 2002) ("[I]f the amount [of a charge for attorney's fees stipulated in a note or contract in the event of breach] is deemed to be penal, either because of its size, or because the creditor was not compelled to pay an attorney the stipulated fee, the provision will be held unenforceable as a penalty, and the creditor entitled, at most, only to a reasonable fee actually paid by him or her.") (footnotes omitted); *cf. District Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 724 (D.C. 2003) ("For a liquidated damages clause to be valid and enforceable, and not void as a penalty, the common law insists that the liquidated damages must not be disproportionate to the level of damages reasonably foreseeable at the time of the making of the contract.") (internal quotation marks omitted).

In any event, the complaint did not adequately allege any claim as to attorney's fees other than fraudulent misrepresentation. The complaint did refer to the attorney's fees as "unearned" and "inappropriate," but there is no indication that those references were meant to support discrete theories of liability beyond a claim of fraudulent misrepresentation. In its motion to dismiss, FMV interpreted the complaint as raising only a claim of fraudulent misrepresentation with respect to attorney's fees. In opposing the motion to dismiss, the Stancils did not dispute FMV's reading of the complaint, and in fact made no reference to the fees being either "unearned" or "inappropriate." Under the circumstances, we cannot fault the trial court for interpreting the complaint as raising only a claim of fraudulent misrepresentation with respect to attorney's fees. *See, e.g.*, *Iverson v. City of Boston*, 452 F.3d 94, 102-03 (1st Cir. 2006) (rejecting appellants' claim that trial court erred by granting motion to dismiss without addressing alternative theory of liability alleged in complaint; "District judges are not expected to be clairvoyants[,] and [a passing reference in the complaint] was too inscrutable a reference to state a . . . claim"; moreover, appellants failed to mention alternative theory in opposing defendant's motion to dismiss, and that failure "defeats their belated attempt to advance the theory on appeal"); *see generally Bible Way Church of Our Lord Jesus Christ v. Beards*, 680 A.2d 419, 430 (D.C. 1996) (although

complaint must be liberally construed, complaint may be dismissed if it fails to give defendant notice of nature of claim).

**B.**

We reverse the trial court's dismissal of the complaint with respect to the remaining counts at issue:  fraudulent misrepresentation as to the $50,000 payment relating to the forbearance agreement (count III); wrongful foreclosure based on the breach of the forbearance agreement (count IV); breach of the forbearance agreement (count V); and fraudulent misrepresentation with respect to the forbearance agreement (count VI).  The trial court dismissed these claims, which overlap to a substantial degree, on two grounds:  the parol-evidence rule and the statute of frauds.  We conclude that neither ground justifies dismissal.

**1.**

Under the District of Columbia's parol-evidence rule, terms "set forth in a writing intended by the parties as a final expression of their agreement . . . may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement[,] but may be explained or supplemented . . . ."  D.C. Code § 28:2-202

(2012 Repl.). The trial court relied on this rule to reject the Stancils' claim that $50,000 of the payment they made to FMV was consideration for an oral forbearance agreement. Specifically, the trial court viewed itself as "statutorily obligated" to accept FMV's claim that the $50,000 payment was simply a payment toward the amount still owed under the note. We disagree.

The parol-evidence rule does not preclude proof of a subsequent oral modification of a written contract, which is what the Stancils allege occurred in this case. As this court has explained,

> [A] written contract may be orally modified or rescinded by a subsequent oral agreement, even where the contract contains express language prohibiting oral modification. . . . The justification for this rule is that the existence of an express bar against oral modification does not remove the parties' continuing rights to contract anew on the subject and to modify or rescind the oral modification provision like any other term of the contract.

*Clark v. Clark*, 535 A.2d 872, 876 (D.C. 1987). Thus, the parol-evidence rule would not necessarily have barred proof of a subsequent oral modification of the note in this case even if the note had required that modifications be in writing. In any event, the note expressly refers to the possibility of modification, but does not

require that modifications be in writing. The parol-evidence rule therefore did not require the trial court to accept as true FMV's assertion that the $50,000 payment was a payment toward principal rather than a payment made in connection with a subsequent oral forbearance agreement. To the contrary, for purposes of the motion to dismiss, the trial court was required to accept as true the Stancils' assertion that the payment was made in connection with the oral forbearance agreement. *See Jordan Keys & Jessamy*, 870 A.2d at 62.

**2.**

In dismissing the complaint, the trial court also relied on the statute of frauds. "The statute of frauds mandates that certain agreements, including those concerning real estate, must be in writing to guard against perjury and protect against unfounded and fraudulent claims." *Railan*, 766 A.2d at 1007 (internal quotation marks omitted). *See generally* D.C. Code § 28-3502 (2012 Repl.). The Stancils contend that FMV is estopped from invoking the statute of frauds, because FMV promised that it would reduce the oral forbearance agreement to writing but then did not fulfill that promise. *See generally Railan*, 766 A.2d at 1007-08 ("There are several situations where courts may refuse to allow the defendant to interpose a statute of frauds defense . . .[, including] where his own fraud was

responsible for the nonexistence of the required signed memorandum . . . .") (internal quotation marks omitted).

The trial court rejected the Stancils' estoppel claim, explaining that FMV's failure to honor the oral forbearance agreement would not by itself constitute the kind of fraud giving rise to estoppel. The trial court appears to have overlooked a critical aspect of the Stancils' argument: that FMV promised to reduce the oral forbearance agreement to writing, that the Stancils relied on that promise in making the $170,000 payment in connection with the forbearance agreement, and that FMV fraudulently failed to reduce the forbearance agreement to writing. This court's cases indicate that such conduct can, if proven, provide a basis for estopping a party from invoking the statute of frauds. *See generally, e.g.*, *Railan*, 766 A.2d at 1007-08.

FMV argues that the Stancils' estoppel argument fails as a matter of law, because the Stancils have not alleged that they detrimentally relied upon the oral forbearance agreement. We doubt the correctness of FMV's assumption that detrimental reliance on the underlying oral agreement is generally required in cases involving a fraudulent promise to reduce an oral agreement to writing. First, this court has treated proof that the plaintiff detrimentally relied upon an oral

agreement as an independent basis upon which a defendant can be estopped from invoking the statute of frauds. *Landow v. Georgetown-Inland W. Corp.*, 454 A.2d 310, 313 n.3 (D.C. 1982). Requiring proof of such detrimental reliance in the category of cases involving a fraudulent promise to reduce an oral agreement to writing would seemingly make that category of cases superfluous.

Second, *Railan* did not hold that detrimental reliance on the underlying oral agreement is a general prerequisite to estoppel in cases involving a fraudulent promise to reduce an oral agreement to writing. To the contrary, the court said without qualification that a defendant cannot invoke the statute of frauds if the defendant's fraud is responsible for the non-existence of the required writing, and did not say that in addition the plaintiff must prove that it detrimentally relied on the underlying oral agreement. 766 A.2d at 1007-08.

It is true that the court in *Railan* concluded that the defendant was not estopped from invoking the statute of frauds, despite the plaintiff's allegation that the defendant had promised to reduce an oral agreement to writing. 766 A.2d at 1007-09. That conclusion, however, turned on the particular circumstances of *Railan*, rather than on a broad requirement that proof that the plaintiff

detrimentally relied on the underlying agreement is always required in order for the defendant to be estopped from relying on the statute of frauds.

According to the plaintiff in *Railan*, (1) the parties reached an oral agreement in connection with the defendant's purchase of a note from the bank relating to the plaintiff's property; (2) a week after the purchase of the note, the plaintiff took some handwritten notes concerning further details of the oral agreement, but then discarded those notes the same day; (3) later that day, the defendant indicated a willingness to reduce the oral agreement to writing; and (4) even later that day, the defendant refused to reduce the oral agreement to writing. 766 A.2d at 1002-03, 1008-09. In rejecting the plaintiff's claim that the defendant was estopped from invoking the statute of frauds, this court pointed out the plaintiff had failed to show detrimental reliance on the underlying oral agreement. 766 A.2d 1009. The court also pointed out that the defendant's failure to reduce the oral agreement to writing "would not make a difference as a matter of law," because the promise to reduce the oral agreement to writing occurred after the underlying oral agreement and the purchase of the note at issue. *Id.* Put differently, the court concluded that the record did not permit a finding that "fraud was responsible for the non-existence of the required writing." *Id. Railan* thus does not foreclose the possibility that estoppel could be warranted even if

detrimental reliance on the underlying oral agreement could not be shown. For example, *Railan* does not address whether estoppel would be warranted if a fraudulent promise to reduce an oral agreement to writing induced the plaintiff to enter into the oral agreement in the first place, or if the defendant's fraudulent promise to reduce the oral agreement to writing lulled the plaintiff into failing to itself memorialize the oral agreement in writing.

In any event, we need not decide whether proof of detrimental reliance on the underlying oral agreement is required in cases involving a fraudulent promise to reduce an oral agreement to writing. The Stancils alleged detrimental reliance in their complaint, specifically claiming that they paid $170,000 to FMV in reliance on the oral agreement to forbear. In its brief on appeal, FMV appears to suggest that the $170,000 payment could not constitute detrimental reliance, because the Stancils had defaulted and thus were already obliged under the note to make that payment. The trial court did not address that issue. We view the issue as best left for the trial court in the first instance on remand, particularly given that a proper analysis of the issue might depend on the resolution of disputes between the parties about the purpose and nature of the $170,000 payment.[4]

---

[4] Courts in other jurisdictions appear to have taken varying approaches to the question whether payments made as part of a forbearance agreement can

(continued…)

Finally, FMV argues that the surviving fraudulent-misrepresentation counts (counts III and VI) should be dismissed because the Stancils failed to allege the elements of fraud. The trial court did not address that argument, and we decline to decide it in the first instance. We do note, however, that FMV's argument is not obviously correct. Although the Stancils' amended complaint is not entirely clear, it adequately alleges that FMV agreed that if the Stancils paid $170,000 FMV would forbear from foreclosing; that FMV also promised to reduce the forbearance agreement to writing; that FMV intended all along to foreclose anyway and never intended to reduce the forbearance agreement to writing; and that the Stancils paid $170,000 to FMV in reliance upon FMV's promises. Such allegations, if proven, arguably would make out a claim of fraudulent misrepresentation. *See generally, e.g.*, *Virginia Acad. of Clinical Psychologists v. Group Hospitalization & Med.*

_____

(…continued)

constitute detrimental reliance. *Compare, e.g.*, *Odimbur v. Wells Fargo Bank*, No. CV 11-04581, 2012 WL 680057, at *4 (C.D. Cal. Mar. 1, 2012) (rejecting defendant's motion to dismiss promissory-estoppel claim, where defendant promised not to foreclose if plaintiff made certain installment payments on mortgage), *with Beck v. Wells Fargo Home Mortg., N.A.*, No. 10-CV-2150, 2010 WL 5340563, at *2 (S.D. Cal. Dec. 10, 2010) (holding plaintiff's alleged payment of $6,000 to bank to defer foreclosure process could not constitute detrimental reliance, because plaintiff was already required to make such payment under mortgage agreement, and plaintiff conceded payment was not made to reinstate loan); *cf. Solomon v. Aurora Loan Servs. LLC*, No. CIV. 2:12-209, 2012 WL 2577559, at *6 (E.D. Cal. July 3, 2012) (holding plaintiff sufficiently alleged detrimental reliance, where plaintiff asserted that she could have paid arrearage to reinstate her loan, but instead relied on defendant's promise that it would not foreclose on plaintiff's property while loan-modification application was pending).

*Servs., Inc.*, 878 A.2d 1226, 1234 (D.C. 2005); *cf. In re Estate of McKenney*, 953 A.2d 336, 341 (D.C. 2008) (discussing contractual misrepresentation).

**3.**

For the foregoing reasons, we conclude that the trial court erred in granting the motion to dismiss based on the parol-evidence rule and the statute of frauds. We therefore reverse and remand for further proceedings with respect to the counts alleging fraudulent misrepresentation as to the $50,000 payment relating to the forbearance agreement (count III); wrongful foreclosure based on the breach of the forbearance agreement (count IV);[5] breach of the forbearance agreement (count V); and fraudulent misrepresentation with respect to the forbearance agreement (count VI). Moreover, for the reasons explained in Part II.A, we affirm the trial court's dismissal of the claim of fraudulent misrepresentation as to the $100,000 charge for attorney's fees (count II).

*So ordered.*

---

[5] As previously noted, the Stancils have not challenged on appeal the trial court's dismissal of their claims that the foreclosure was wrongful on statutory grounds. We therefore leave that ruling undisturbed, and remand on count IV only with respect to the claim of wrongful foreclosure based on the forbearance agreement.

NEBEKER, *Senior Judge*, concurring in part and dissenting in part: I would affirm the judgment and not reform the litigation into an action not contemplated by the parties or the trial court. While I join the majority opinion as to count II, I respectfully dissent from my colleagues' decision to remand counts III, IV, V, and VI. I believe a remand is unnecessary, because the Stancils failed to state a claim for fraudulent misrepresentation or breach of an oral contract, and it would be futile to afford them a second opportunity to do so. The majority seems to believe that, by allowing the Stancils a second try at pleading their case, it is serving broader, undefined principles of equity. But the Stancils did not ask the trial court for leave to amend, nor did they ask this court for a remand to allow such amendment. The majority goes out of its way to relieve the Stancils of their failure — relief for which they have not asked. In doing so, it effectively sacrifices this court's role as a neutral arbiter on the altar of the ever-variable concept of fairness. What the Stancils deem fair surely is not so viewed by FMV, which will now have the additional burden and expense of further litigation imposed by this court. In sum, the majority licenses the Stancils to recast their failed attempt to state a cognizable claim; an approach incompatible with efficient judicial administration:

> In our jurisprudential system, trial and appellate processes are synchronized in contemplation that review will normally be confined to matters appropriately submitted for determination in the court of first resort. Questions not properly raised and preserved

> during the proceedings under examination, and points not asserted with sufficient precision to indicate distinctly the party's thesis, will normally be spurned on appeal. Canons of this tenor reflect, not obeisance to ritual, but considerations of fairness to the court and the parties and of the public interest in bringing litigation to an end after fair opportunity has been afforded to present all issues of law and fact. The injunction that trial ventilation precede appellate exploration best subserves that policy without appreciable imposition upon the litigants. It requires them to deal fairly and frankly with each other and with the trial tribunal with respect to their controversies. It prevents the trial of cases piecemeal or in installment. It tends to put an end to litigation. We think that sound judicial administration embraces importantly the elimination of expenditures of time and energy — by parties as well as courts — incidental to potentially unnecessary appeals.

*Miller v. Avirom*, 127 U.S. App. D.C. 367, 369-70, 384 F.2d 319, 321-22 (1967) (footnotes and internal quotation marks omitted).

In their complaint, the Stancils failed to plead fraud with the requisite particularity, as they did not allege any detrimental reliance on FMV's alleged misrepresentations. To make out a fraudulent-misrepresentation claim, a plaintiff must allege, among other things, "'reliance . . . which consequently resulted in provable damages.'" *Railan v. Katyal*, 766 A.2d 998, 1009 (D.C. 2001) (quoting *Dresser v. Sunderland Apartments Tenants Ass'n, Inc.*, 465 A.2d 835, 839 (D.C. 1983)); *accord Kitt v. Capital Concerts, Inc.*, 742 A.2d 856, 861 (D.C. 1999)

("[T]he plaintiff must show that 'provable damages' resulted from the fraud." (quoting *Dresser*, *supra*)). The Stancils alleged, in conclusory fashion, that they relied on FMV's alleged misrepresentations, but failed to specify what that reliance entailed. Accordingly, they failed to plead adequately their fraud claims. *See Atraqchi v. GUMC Unified Billing Servs.*, 788 A.2d 559, 563 (D.C. 2002) ("'Fraud is never presumed and must be particularly pleaded.'" (quoting *Bennett v. Kiggins*, 377 A.2d 57, 59-60 (D.C. 1977))).

Remand is unnecessary because the Stancils cannot cure this deficiency. Although "leave to amend is almost always allowed to cure deficiencies in pleading fraud," *Washkoviak v. Student Loan Mktg. Ass'n*, 849 A.2d 37, 39 (D.C. 2004), a court is not required to grant leave to amend when the plaintiff will not be able to repair its defective pleading. *See, e.g.*, *United States ex rel. Raynor v. National Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 958 (8th Cir. 2012) ("[F]utility constitutes a valid reason for denial of a motion to amend." (quoting *Knapp v. Hanson*, 183 F.3d 786, 790 (8th Cir. 1999))); *Hadley v. BNC Mortg., Inc.*, 466 Fed. Appx. 612, 613 (9th Cir. 2012) ("The district court did not abuse its discretion by dismissing without leave to amend where amendment would be futile."); *In re Interbank Funding Corp. Sec. Litig.*, 393 U.S. App. D.C. 415, 420, 629 F.3d 213, 218 (2010) ("[A] district court may properly deny a motion to

amend if the amended pleading would not survive a motion to dismiss."); 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1300 (3d ed. 2013) ("Leave to replead will be denied, however, when the district court believes that it would be futile . . . ."); *cf. Floyd v. Bank of Am.*, 70 A.3d 246 (D.C. 2013) (affirming trial court's dismissal of complaint on the alternative ground that plaintiffs failed to state a legally-cognizable claim, even though the trial court dismissed for lack of standing and never reached that issue). And here, granting leave to amend would be an exercise in futility, as the Stancils cannot allege they detrimentally relied on FMV's misrepresentations.

Specifically, the Stancils alleged that FMV made two misrepresentations: (1) that, in exchange for $50,000, it would not foreclose on their investment property; and (2) that it would reduce this agreement to writing. But the Stancils cannot claim they suffered any detriment as a result of either misrepresentation, as neither left them in a worse position than they would have been had FMV done nothing at all. *See* BLACK'S LAW DICTIONARY 1404 (9th ed. 2009) (defining "detrimental reliance" as "[r]eliance by one party on the acts or representations of another, causing a worsening of the first party's position"). First, that they ultimately faced foreclosure cannot be a legal detriment, as FMV had a right to foreclose before it made any representation. Thus, FMV's alleged promise left

them in no worse position than when they started. Nor can the Stancils claim detrimental reliance based on their $50,000 payment. The performance of an obligation already owed is not a legal detriment. *See, e.g.*, *Conrad v. Bank of Am.*, 53 Cal. Rptr. 2d 336, 352 (Cal. Ct. App. 1996) (holding that plaintiffs' execution of a new assignment-of-proceeds agreement — in reliance on Bank's alleged promise to lend additional money — was not detrimental because "the Bank's existing security agreement and assignment of proceeds entitled the Bank to the proceeds of [the sale] so long as it was owed money by [the plaintiffs]"). Under the note's terms, the Stancils owed FMV $500,000 — which their default rendered immediately due. Accordingly, their payment was nothing more than partial performance of their preexisting contractual duties. This, in itself, is not a legal detriment.

For a similar reason, the Stancils cannot make out a valid breach-of-contract claim. In the absence of a qualifying writing, the Statute of Frauds leaves real-property agreements unenforceable. *Mark Keshishian & Sons, Inc. v. Washington Square, Inc.*, 414 A.2d 834, 840 (D.C. 1980). We have recognized an estoppel exception to the Statute "where [the defendant's] own fraud was responsible for the non-existence of the required signed memorandum." *Railan*, *supra*, 766 A.2d at 1007-08 (quoting *Hackney v. Morelite Constr.*, 418 A.2d 1062, 1066 (D.C.

1980)).    But    the    Stancils    do    not    qualify    for    this    exception    because,    as    just discussed, they cannot allege that FMV committed fraud.


Accordingly, rather than remand, I would affirm the trial court's order on all counts.